IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| HEATHER PRESLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| vs. ) | Civil No.:_____ |
| ) | |
| ) | COLLECTIVE ACTION COMPLAINT |
| REAL TOWING & TRANSPORT, LLC, ) | FOR VIOLATION OF THE FAIR |
| and KELLY INGERSOLL ) | LABOR STANDARDS ACT OF 1938 |
| ) | JURY DEMAND |
| Defendants. ) | |
| _____ ) | |

## COMPLAINT

Plaintiff Heather Presley ("Plaintiff"), by and through her attorneys, alleges for her Complaint as follows:

### I. INTRODUCTION

1. Plaintiff brings this action against Real Towing & Transport, LLC (hereinafter "Real Towing"), and Kelly Ingersoll individually (hereinafter referred to collectively as "Defendants") for legal relief to redress unlawful violations of Plaintiff's rights under the Fair Labor Standards Act of 1938 ("FLSA" or "the Act"), 29 U.S.C. §§201, *et seq*., which have deprived the Plaintiff of her lawful wages. Plaintiff also brings an individual action for damages as a result of Defendants' illegal firing of Plaintiff in violation of the FLSA's anti-retaliation provision embodied in 29 U.S.C. §215(a)(3) of the FLSA.

2. This action is brought to recover unpaid overtime compensation owed to the Plaintiff

1

pursuant to the FLSA.  The Plaintiff was employed by Defendants as an hourly-paid dispatcher and customer service representative who worked for Defendants at their office location in Nashville, Tennessee.

3. Plaintiff seeks uncompensated overtime compensation, an equal amount of liquidated damages, attorneys' fees, and costs pursuant to 29 U.S.C. §216(b).

## II. THE PARTIES

### A. THE PLAINTIFF

4. Plaintiff Heather Presley currently resides in Davidson County, Tennessee and is a citizen of the United States.  Plaintiff was employed by Defendants from August of 2017 until July of 2019 when she was terminated for complaining about Defendants' refusal to pay her for working overtime.

5. During her employment with Defendants, Plaintiff worked as a dispatcher and customer service representative answering an average of 90 to 120 telephone calls a day, and sometimes more, and performing a large amount of clerical work for the office.  During the last year of her employment after Defendant Kelly Ingersoll became an owner of Real Towing, Plaintiff often worked more than 40 hours in a workweek for which she either received no overtime pay, or only a portion of the overtime pay to which she was entitled.

6. At all times material to this action, the Plaintiff was an "employee" of the Defendants as defined by §203(e)(1) of the FLSA, and worked for Defendants within the territory of the United States within the three year period preceding the filing of this Complaint.  The Plaintiff is covered by the overtime provision set forth in §207 of the FLSA and was eligible for overtime pay for the entire period during which she was employed by Defendants.

2

## B.     THE DEFENDANTS

7. Defendant Real Towing is a limited liability company which was established in November, 2016 under Texas state law, and which at all times material to this action has maintained an office in Nashville, Tennessee, at 3896 Stewarts Lane.

8. Real Towing provides, and holds itself out as providing, salvage towing, private or B2B towing, vehicle recovery, dispatch operations, catastrophic recovery & towing, and catastrophic event management.

9. Defendant Ingersoll became an owner and/or principal of Real Towing during the last year of Plaintiff's employment with Defendants, and immediately began exercising supervisory authority over the Plaintiff and others employed with Real Towing. Defendant Ingersoll used his position and authority with Real Towing to devise, institute, promulgate, enforce, approve and/or ratify the policy and practice of depriving Plaintiff of her lawful overtime pay for his own personal financial benefit.

10. Defendants are subject to personal jurisdiction in the State of Tennessee for purposes of this lawsuit.

11. At all times material to this action, Real Towing has been an enterprise engaged in commerce or in the production of goods for commerce as defined by §203(s)(1) of the FLSA, and had a gross volume of sales which has exceeded $500,000.

12. At all times material to this action Real Towing was an "employer" of Plaintiff, as defined by §203(d) of the FLSA.

13. At all times material to this action Defendant Ingersoll was an "employer" of the Plaintiff, as defined by §203(d) of the FLSA.

14. At all times material hereto the overtime provision set forth in §207 of the FLSA applied to and governed the business operations of Real Towing.

### III. JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction) and 29 U.S.C. §216(b) (FLSA).

16. Venue is proper in the Middle District of Tennessee under 28 U.S.C. §1391(b)-(c).

### IV. VIOLATIONS OF THE FLSA

17. Defendants have intentionally and repeatedly engaged in a practice of improperly and unlawfully depriving Plaintiff of her lawful overtime pay as part of a scheme to violate the provisions of the FLSA and corresponding federal regulations.

18. In particular, Defendants requested and/or "suffered or permitted" Plaintiff to work without proper overtime compensation in violation of the FLSA and clear regulatory provisions and guidelines applicable to their operations. For instance, 29 C.F.R. §785.11 provides in pertinent part that "[w]ork not requested but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift. . . . The reason is immaterial. The employer knows or has reason to believe that he is continuing to work and the time is working time." Moreover, 29 C.F.R. §785.13, titled "Duty of Management," provides in pertinent part that "[i]n all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them." These regulations applied to, and continue to apply to, Defendants.

19. Defendants required Plaintiff to work a minimum regular schedule from 8:00 a.m. to 5:00 p.m., Monday through Friday.

20. Due to the heavy volume of calls and other duties Plaintiff was required to perform, she was never able to enjoy an uninterrupted meal break of any duration throughout her employment with Defendants.

21. In addition to working a regular 9-hour daily schedule from 8:00 a.m. to 5:00 p.m., Plaintiff often began working before her regular shift started, and continued working well after her regular shift ended in order to complete her work.

. 22. Throughout her employment with Real Tow, Plaintiff frequently worked more than 10 hours a day. By way of example, attached as **Exhibit A** are true and accurate copies of Plaintiff's clock-in and clock-out times showing that Plaintiff worked 9 hours, 7 minutes on Friday, June 28, 2019; 10 hours, 22 minutes on Monday, July 1, 2019; 10 hours, 1 minute on Tuesday July 2, 2019; and 9 hours, 43 minutes on Wednesday, July 3, 2019.

23. Defendant Ingersoll became an owner and principal of Real Towing approximately one year prior to the date Plaintiff was terminated in July of 2019.

23. After Defendant Ingersoll became a principal in Real Towing, he took control of payroll for Real Towing from Michael Brooks, who is another owner and principal in Real Towing.

24. Before Defendant Ingersoll took over the payroll function, Plaintiff regularly worked overtime hours on a weekly basis, and received proper overtime pay for the hours she worked in excess of 40 in a workweek.

25. After Defendant Ingersoll took over the payroll function, Plaintiff was either paid for only a few of the overtime hours she actually worked, or was not paid at all for the overtime hours she worked.

26. Defendant Ingersoll implemented a "no overtime pay" policy after he took control of

5

Real Towing's payroll function which did not prohibit Plaintiff from working overtime hours as she typically did each week, but which provided she would not receive overtime pay for all the overtime hours she recorded.

27. As a consequence of Defendant Ingersoll's implementation of a "no overtime pay" policy at Real Towing, Plaintiff would often be paid for exactly 40 hours a week even though she had worked a considerable amount of overtime work during those weeks.

28. By way of example, attached as **Exhibit B** are true and accurate copies of Plaintiff's Earnings Statements which illustrate that for week ending August 12, 2018, and August 19, 2018, Plaintiff was paid for exactly 40 hours of work in each of those workweeks even though Plaintiff worked more than 40 hours in each of those workweeks.

29. By way of further example, during the work of July 1, 2019, Ian Gordan, Plaintiff's immediate supervisor and the manager of Real Towing's Nashville Tennessee branch, took a vacation week and traveled to Las Vegas, Nevada, leaving Plaintiff alone to run the Nashville branch that week. As a result of the increased workload she took on in Mr. Gordan's absence, the Plaintiff worked past 7:00 p.m. during most, if not all, workdays during the July 1, 2019 workweek. Despite working and reporting approximately 15 hours of overtime, Plaintiff received no overtime pay for that workweek.

30. At some point after Defendant Ingersoll took over the payroll function at Real Towing, he also stopped sending check stubs to Plaintiff showing the regular and overtime hours she worked, and whether she was being paid for working those hours.

V. **DEFENDANTS INGERSOLL'S INDIVIDUAL LIABILITY**

31. After he became involved with Real Towing, Defendant Ingersoll exercised actual operational control over the business activities and operations of Real Towing, including exercising control over the compensation and payroll policies and practices of Real Towing.

32. In particular, Defendant Ingersoll oversaw and controlled the payroll, wages, work assignments and schedules of the Plaintiff and others who worked for Real Towing, or had the right to do so.

33. Defendant Ingersoll also implemented a "no overtime pay" policy and practice at Real Towing which deprived Plaintiff from receiving overtime pay for all the overtime hours she worked and reported during her employment at Real Towing.

34. Defendant Ingersoll directed others, such as Cameron Sayers, the accountant for Real Towing, and Michael Brooks, a part owner of Real Towing, to implement and enforce the "no overtime pay" policy and practice which he implemented in order to deprive Plaintiff, and perhaps others who worked for Real Towing at it other locations, of their lawful overtime pay.

35. Specifically, Plaintiff would turn her time into her supervisor, Ian Gordan, who would then forward Plaintiff's hours of work to Real Towing's accountant Cameron Sayers, who would then "cut" Plaintiff's time to eliminate her reported overtime hours. When Plaintiff complained to Sayers about her hours being "shaved" or "cut," Sayers would tell Plaintiff that he was directed to do so by Defendant Ingersoll.

36. Accordingly, Defendant Ingersoll acted "directly or indirectly in the interest of an employer in relation to" the Plaintiff within the meaning of §203(d) of the FLSA, and is thus individually and personally liable for the unpaid wages, liquidated damages, costs and attorneys' fees, and all other relief sought herein.

## VI. COUNT I: FLSA VIOLATIONS

37. All previous paragraphs are incorporated as though fully set forth herein. By their actions alleged herein, Defendants Real Towing and Ingersoll willfully, knowingly, and/or recklessly violated the provisions of the FLSA and corresponding federal regulations.

38. Defendants willfully and intentionally engaged in a pattern and practice of violating the provisions of the FLSA, as detailed herein, by failing to properly compensate all overtime hours worked by Plaintiff in accordance with and as required by §207 of the FLSA.

39. Defendants knew that Plaintiff was working and reporting a substantial number of hours of overtime per week for which she was not receiving pay at the rate of time and one-half their regular rates of pay as required by law.

40. As a result of Defendants' violations of the FLSA has suffered damages by being deprived of her lawful overtime wages in accordance with §207 of the FLSA.

41. Defendants have made no good faith effort to comply with the FLSA with respect to their compensation of Plaintiff, and in fact acted willfully and knowingly in violation of the FLSA.

42. As a result of the unlawful acts of Defendants, Plaintiff has been deprived of her rightful overtime compensation in an amount to be determined at trial, and are entitled to recover of such amounts, as-well-as liquidated damages, prejudgment interest, attorneys' fees, costs, and all other compensation and relief permitted by applicable law.

43. Contemporaneously with the filing of this Complaint, Plaintiff has filed her Consent to Become Party Plaintiff which is attached hereto as **Exhibit C**.

## VII. COUNT II: DISCHARGE IN VIOLATION OF THE FAIR LABOR STANDARD ACT'S ANTI-RETALIATION PROVISION

44. All previous paragraphs are incorporated as though fully set forth herein.

45. Following Defendant Ingersoll's implement and enforcement of the "no overtime pay" policy and practice at Real Towing, Plaintiff repeatedly complained in person and/or by telephone directly to Ingersoll and others – such as Real Towing's accountant, Cameron Sayers, and her immediate supervisor, Ian Gordan – that she was not being properly paid for all of the hours she was working, and was being cheated out of her overtime pay.

46. Plaintiff also repeatedly sent emails directly to Defendant Ingersoll through Real Towing's email server, which she copied to Real Towing's other part-owners and/or principals, Michael Brooks and Larry Sarvio, asking why she was not being paid for the overtime hours she was required to work.

47. Most of the time when Plaintiff sent Defendant Ingersoll emails complaining about being cheated out of her overtime pay, Ingersoll simply ignored her, but not always. When Ingersoll did respond, he would usually drop the other owner-principals Plaintiff included in her original email from his response, and inform Plaintiff that Real Towing did not pay overtime, and if Plaintiff worked it, it was her fault. On one occasion Ingersoll responded by sending Plaintiff a "brochure" he concocted which stated that employees were required to "clock-out" at their scheduled shift end.

48. Defendant Ingersoll grew tired of Plaintiff's complaints about her pay and viewed her as the "squeaky wheel," and made up his mind to get rid of her.

49. In late June of 2019, Plaintiff's immediate supervisor, Ian Gordan, completed a performance appraisal on Plaintiff in which he rated her overall performance as "Very Good."

50. After completing Plaintiff's performance appraisal, Mr. Gordan sent it to Defendant Ingersoll, who rejected it and completed another performance appraisal on Plaintiff which downgraded her overall performance to "Good" and "Improvement Needed."

51. Defendant Ingersoll had no legitimate factual or other basis upon which to downgrade Plaintiff's job performance, or to take issue with the performance review prepared by her immediate supervisor, Mr. Gordan, who worked with Plaintiff and observed her job performance on a daily basis. Ingersoll lived in Michigan and had only visited the Nashville branch on a couple of occasions and had only briefly met Plaintiff.

52. Plaintiff continued to complain whenever the Defendants shorted her on her pay, and on July 13, 2019, she spoke to Michael Brooks, a co-owner and principal of Real Towing, who told Plaintiff that he would come in to the Nashville branch on the following Monday July 15, 2019, and pay Plaintiff the overtime pay she was owed with a check from Real Towing's business account.

53. At mid-day on Monday, July 15, 2019, Brooks did come to the Nashville branch office, but instead of paying Plaintiff the back wages she was owed as promised, he handed her a "CORRECTIVE ACTION AND DISCIPLINE NOTICE" form which indicated Plaintiff was suspended without pay from July 15 through July 18, 2019 based on a completely bogus and pretextual reason.

54. The pretextual reason for Plaintiff's suspension (and ultimate firing) was that nearly a year before her then fiancé bought a "Peddle vehicle" from an individual seller, and Plaintiff drove it to work one day. Plaintiff's then fiancé, not Plaintiff, bought the vehicle and titled it in his name, and Plaintiff only drove it to work because her truck was in the shop. Defendant's stated reason for suspending (and later firing) Plaintiff was not only pretextual, it was, and is, irrational and nonsensical.

10

55. When Plaintiff told Brooks that she was not involved in the car purchase and had nothing to do with it, Brooks indicated that "his hands were tied" and that her suspension was Defendant Ingersoll's decision.

56. Plaintiff had never been disciplined or received any write-up before she received the July 15, 2019 "CORRECTIVE ACTION AND DISCIPLINE NOTICE," had received regular increases in her hourly rate of pay, and violated no policy or procedure of Real Towing.

57. To Plaintiff's knowledge, throughout her employment Real Towing never had any established policy manuals, employee handbooks, or HR policy and procedures of any kind, and furnished none to Plaintiff despite her request for them.

56. Although the July 15, 2019 "CORRECTIVE ACTION AND DISCIPLINE NOTICE" indicated that Plaintiff was being suspended "pending investigation of circumstances described herein," no such "investigation" was conducted by anyone because Plaintiff's fate had already been sealed by Defendant Ingersoll.

57. In fact, when Plaintiff's "suspension" was up, she returned to work on Monday, July 19, 2019, and was told by her immediate supervisor, Ian Gordan, to go home because she had been fired.

58. Section 215(a)(3) of the FLSA prohibits an employer from discriminating against an employee for asserting rights protected by the FLSA. Specifically, that subsection provides that "it shall be unlawful for any person…to discharge or in any manner discriminate against an employee because such employee has filed any complaint or instituted any proceeding under or relating to this chapter, or has testified or is about to testify in any such proceeding...." 29 U.S.C. §215(a)(3).

11

59. Plaintiff's complaints and assertion of rights protected by the FLSA was the precipitating cause, and a motivating factor, behind Defendants' discharge of the Plaintiff in violation of Section 215(a)(3) of the FLSA.

60. Defendants' firing of Plaintiff was in willful violation of the FLSA's anti-retaliation provision set forth in 29 U.S.C. §215(a)(3).

61. As a direct consequence of Defendants' illegal firing of Plaintiff, Plaintiff has suffered lost earnings, mental pain and suffering, humiliation and embarrassment.

62. Defendant Ingersoll initiated, orchestrated and implemented Plaintiff's discharge in violation of Section 215(a)(3) of the FLSA, and is therefore jointly and severally and personally liable as an "employer" of Plaintiff as defined by §203(d) of the FLSA, along with Real Towing, for all damages and injuries Plaintiff sustained as a result of their actions.

## VIII. PRAYER FOR RELIEF

63. WHEREFORE, the Plaintiff prays for the following relief:

A. That Plaintiff be awarded damages in the amount of her unpaid overtime compensation, plus an equal amount of liquidated damages and/or prejudgment interest;

B. That Plaintiff be awarded damages in the amount of her reasonable attorneys' fees;

C. That Plaintiff be awarded damages in the amount of the costs and expenses of prosecuting this action;

D. That Plaintiff be awarded damages for lost earnings, mental pain and suffering, humiliation and embarrassment, and punitive damages for Defendants willful and malicious violation of §215(a)(3) of the FLSA;

E. Such other legal and equitable relief including, but not limited to, any injunctive

and/or declaratory relief to which they may be entitled; and,

  F. Plaintiff further demands a jury to try the issues when joined.

                Respectfully submitted,

                HOWELL LAW, PLLC

                /s/ Trevor Howell
                Trevor Howell, TN Bar # 9496
                P.O. Box 158511
                Nashville, TN 37205
                Tel.: 615-406-1416
                Trevor@howelllawfirmllc.com


                DICKINSON WRIGHT PLLC

                /s/ Peter F. Klett
                Peter F. Klett, TN Bar #12688
                Joshua Burgener, TN Bar #29077
                Fifth Third Center
                424 Church Street, Suite 800
                Nashville, TN 37219-2392
                Tel.: 615-244-6538
                pklett@dickinsonwright.com
                jburgener@dickinsonwright.com

NASHVILLE 89147-1 709181v1